The single question presented by the case for the consideration of this court is, whether such an engagement, or promise, is avalid contract between the parties to the record, and as such, capable of being enforced against the promisers. On the other side, it is contended that the writing signed by the defendants, upon which the suit is brought, is in substance and legal effect a promissory note, and as such, it imported, prima facie, to be founded upon a valuable consideration, and so it was held by the court below. On the other side, it is insisted that the writing is not a promissory note, but a mere guaranty of the payment of the note made by Ephraim Durham, upon which it is endorsed, and to be valid, the promise must not only be in writing, but the writing must express the consideration upon which it is made. It therefore becomes necessary, to determine what the legal effect of the writing sued upon is; for if it is a promissory note, there is no error in the judgment of the court below, as the law implies a consideration for such a contract, and therefore it is not necessary to its validity, that it should state it. On the other hand, if it is nothing more than a promise in writing to answer for the debt, default or miscarriage of another person, to be valid it must express *Page 543 
the consideration upon which the promise is made, as well as the promise.
And first, is the writing in question a promissory note? To constitute such a contract, there must be a written promise to pay absolutely and unconditionally a certain sum of money therein named, by one person to another therein mentioned, or his order, or to the order of any other person, or unto the bearer, at a time specified, or on demand or immediately. (Story on Prom.Notes, § 1; 1 R.S. 768, § 1; Goshen Turnpike Co. v.Hurtin, 9 John. 217; Byles on Bills of Ex. 3; 2 Black.Com. 467; 1 Steph. N.P. 762; Chitty on Bills, ed. 1839, 548.) Certain qualities, therefore, are essential to make a promissory note. The promise must be written, and be for the payment of money only, by the promiser, and not for the performance of some other act, or in the alternative; the money must be named, certain, and be payable at all events, not depending on any contingency, either as to amount, event, or fund out of which payment is to be made, or the parties by or to whom the payment is to be made. (Chitty on Bills, ed. 1839, 152, 153; Cook v. Saterlee, 6 Cowen, 108; Leiber v.Goodrich, 5 id. 186; Smith v. Nightingale, 2 Stark, R. 375; Barlow v. Broadhurst, 4 Moore, 471; Jones v.Simpson, 2 Barn. Cress. 318; Blankenhagen v. Blundell,
2 Barn. Ald. 417; Ferris v. Bond, 4 id. 679.)
The written promise of the defendants in this case is not thatthey will pay a certain sum of money at a specified time absolutely and unconditionally. It is nothing more than a positive engagement that Ephraim Durham will pay his note according its terms. The defendants' promise to pay is upon the contingency, that E. Durham shall fail to pay as he promised; and until he shall make default, they are under no obligation to pay; they undertake to pay only in the event of E. Durham's not paying. This writing is deficient, at least in one essential quality, to constitute it a promissory note — that is, it does not contain a positive engagement by the promisers that theywill pay the money; without such an engagement, no written promise, whatever else it may be, can be a promissory note. Ephraim Durham had made his note, by which he promised to pay C. *Page 544 
P. Durham or bearer $40, at a subsequent day named. The defendants, by their writing, in effect promised that he would pay his debt as he had thus promised, and if he failed to do so, they would pay it.
I know that there are many cases in this and other states, which decide that a written promise substantially in the form of the one under consideration, made by a third person upon the back of an existing promissory note, amounts to an absolute and unconditional promise for the payment of money, and is in effect a new promissory note. But some of them also decide that the maker of such a promise could not be regarded as a joint or several maker with the maker of the existing note upon the back of which it is written. (Ketchell v. Burns, 24 Wend. 456;Miller v. Gaston, 2 Hill, 188.)
There are other cases which hold that when a third person is privy to the original consideration, and at the time of the making of a promissory note makes such a written promise on the back of it, he may be treated as a joint and several promiser with the party who signs on the face of the note, upon the principle that two instruments of the same general nature, both executed at the same time, and relating to the same subject matter, are to be construed together, as forming but one agreement. As he who signs on the face, and he who endorses his name on the back, both promise to do the very same thing, to wit, to pay the money at the specified time, they may, without doing violence to the contract, he deemed as joint makers; and as in point of form, each promises for himself, the undertaking may be treated as several, as well as joint. And in respect to the consideration, it has been thought sufficient that the endorsement purports to be "for value received," or that the consideration, if not expressed, is established in proof by the contemporaneous facts when the note was made. (Hough v. Gray,
19 Wend. 202; Miller v. Gaston, 2 Hill, 188; Luqueer v.Prosser, 1 id. 256; Story on Prom. Notes, § 469.)
To give such a construction to the two instruments, it is necessary to assume the identity of the two contracts — the very point disputed. It is denied that he who endorses and signs upon the back of such note a written promise to guarantee the *Page 545 
payment of it, does thereby promise the same thing which the one promises who signs on the face of the note, to wit, to pay the money at all events at a specified time; his promise to pay, it is insisted, is only in the event of a failure to pay by the one who signs on the face of the note. It assumes the liability of the other as principal, and for whom he becomes a surety. His engagement being merely in aid of, and collateral to, the liability of the principal debtor or party for whom he makes the promise, it is obvious, as I think, that the two contracts are not identical, but widely different in their nature and terms. Each not only in point of form promises for himself, but each promises to do a different thing from the other. The one promises absolutely to pay a sum of money at a specified time to a person named — the other that he will pay the same sum of money, not positively, but only in the event that the former fails to pay.
Luqueer v. Prosser went to the court of errors, where the judgment of the supreme court was affirmed. The action was by the plantiffs as bearers of a joint and several promissory note, made by Edson and Arnold, two of the defendants, payable to one Parsons or bearer; the note bore date 10th of April, 1839. At the time it was made, and before it was delivered to Parsons, Prosser, the other defendant, signed upon the back of it, the following: "For value received I guaranty the payment of the within note, and waive notice of non-payment." The note thus made and endorsed was delivered to Parsons as security for the price of a pair of horses and a wagon that day sold by him to Edson and Arnold. A condition of the agreement of sale was that Edson and Arnold should give Parsons good endorsed paper, and this note so endorsed was received as a performance of that condition, upon which the property was delivered. In reviewing the decision of the supreme court by the court of errors, the chancellor delivered the only written opinion, so far as the report of the case shows. He came to the conclusion, that a general guaranty, like the one in question in that case, upon a note payable to bearer, was in law a general endorsement of the note, with a waiver of the condition precedent of a notice of non-payment by the drawers, and that Prosser *Page 546 
was therefore liable to the plaintiffs as such endorser, and properly sued as such in a joint suit with the makers, under the provisions of the statute on the subject of joint suits. The chancellor was also of opinion that Prosser could have been sued upon his guaranty, by the bearer of the note, as upon an absolute promise to pay the amount to the bearer when it became due; constituting Prosser, in effect, the maker of a promissory note, payable to bearer, for the sum and at the time specified in the note upon which the guaranty was written; and this was founded upon the fact that the guaranty contained the words "for value received," which it was said removed all possible objection that it was a promise to pay the debt of Edson and Arnold, and that the consideration as well as the promise, must be in writing. Upon the authority of this decision, the supreme court, inLeggett v. Raymond, (6 Hill, 639,) decided that Leggett, who had signed a written promise as follows — "January 29, 1842. I guaranty the payment of this note," upon the back of a promissory note made by Viele, on the 15th of January, 1842, payable to Leggett or bearer, six months after date, might be regarded as an endorser of the note of Viele, and having been properly charged as such, the action might well be maintained. It was there said, "if we can get rid of the special contract which the defendant actually made, it then stands as the common case of a note endorsed in blank by the payee. Such a contract imports a consideration, and is in its own nature negotiable." It has been seen by the cases referred to, that the courts not only had before then, got rid of such special contracts; but in what manner, and upon what grounds.
Where the maker of such a contract had not been properly charged as a general commercial endorser of a promissory note, it was regarded in effect, as a new promissory note, and as such imported a consideration — but that the maker could not be held as a joint or several maker with the maker of the existing note; if however the third person was privy to the original consideration, and made such a contract at the time of the making of the note upon the back of which it was endorsed, he might be treated as a joint and several promiser with the party who signed the face of the note — and if the maker of such a contract *Page 547 
had been properly charged as an endorser, he might be held as such, and his contract construed to be a general contract of endorsement of a promissory note in blank. So that a contract, identical in form as written and signed, has been, first, adjudged to be, and enforced as, a new and independent promissory note, of the signer of it; second, as a joint and several promissory note with the maker of the face of the note; and third, as a general commercial contract of endorsement of a promissory note.
In Hall v. Newcomb, (3 Hill, 233; S.C. in error, 7id. 416,) a strenuous attempt was made to convert a blank endorsement of a promissory note made by a third person for the accommodation of the maker, into a guaranty, in favor of the payee of the note. And I confess that I am not able to see why it might not as well be done, and upon as sound a principle, as was assumed in the cases referred to, to change a special contract of guaranty, into either a promissory note or blank endorsement of such note. But the supreme court held that the rule allowing a blank endorsement of a note to be construed into a guaranty, only applied, when such a construction was necessary to prevent an entire failure of the contract; and as the plaintiff, the payee of the note, might have put the note in such a form by endorsing it himself, as to charge the defendant in the character of second endorser, the giving it effect in any other would, therefore, be going beyond the principle which makes a contract enure as having a different effect from what its direct words import. But the court of errors held that one who endorsed a negotiable promissory note in blank, merely engages to pay upon the usual conditions of demand and notice, and that parol evidence was not admissible to vary the legal effect of his undertaking. The chancellor delivered the leading opinion, for affirmance of the judgment of the supreme court in that case, and he said that "the courts have gone far enough in repealing the statute to prevent frauds and perjuries, by introducing parol evidence to charge a mere surety for the principal debtor, by showing that his written agreement means something else than what upon its face it purports to mean." And he fully concurs in the opinion expressed by Mr. Justice Bronson *Page 548 
in Seabury v. Hungerford, (2 Hill, 80,) that "when a man writes his name in blank upon the back of a negotiable promissory note, he only agrees that he will pay the note to the holder, on receiving due notice that the maker, upon demand made at the proper time, has neglected to pay it. Mere proof that he endorsed the paper to enable the maker to raise money on it, does not change the nature of his legal liability as endorser, when the note is in the hands of a bona fide holder for a good consideration. Such was the whole effect of the parol proof in this case. And for the courts to allow proof by parol to charge a mere surety, beyond the legal effect of his written blank endorsement on such paper, would bring them in direct conflict with the provisions of the statute of frauds. (2 R.S. 135, § 2,sub. 2.)"
I think that the courts have gone too far in repealing the statute to prevent frauds and perjuries in those cases to be found in our reports, which hold, in effect, that a written contract of one kind may be turned into a contract of a different kind, by parol proof concerning the intention of the parties; that the endorser of a promissory note may, under certain circumstances, be charged as maker or guarantor; and that the guarantor of a promissory note may sometimes be charged as maker or endorser. And I fully agree in the opinion expressed by Judge Bronson in Spies v. Gilmore, (1 Comst. 321,) that such cases stand upon no principle, and that they ought to be regarded as having been entirely overthrown by the decisions in Hall v.Newcomb, and Spies v. Gilmore. It is the duty of courts to give effect to contracts, if legal, as the parties make them; but they have no authority to make contracts for parties, nor substitute one contract for another.
It is entirely plain that the defendants in this case have not contracted as makers or endorsers of a promissory note, but as guarantors, and if they are not liable as such, they are not liable at all. A guaranty in its legal and commercial sense, is defined by Judge Story, to be "an undertaking by one person to be answerable for the payment of some debt, or the due performance of some contract or duty by another person, who himself *Page 549 
remains liable to pay or perform the same." (Story on Prom.Notes, § 457.) Pitman on Pr. and Sureties, p. 1, says that it is a contract "whereby one person engages to be answerable for the debt, default, or miscarriage of another." Mr. Fell in his treatise on the law of mercantile guaranties, page 1, defines a guarantee to be "a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person, who is in the first instance liable to such payment or performance." It is not a direct engagement to pay one's own debt, or perform an obligation resting primarily on the guarantor, for it assumes the liability of another as principal, and for whom the guarantor becomes surety. The undertaking is in aid of, and collateral to, the independent liability of the principal debtor or party for whom the guaranty is made.
The undertaking of the defendants was not to pay their own debt, but that Ephraim Durham should pay his. He was primarily liable to pay the money specified in the note, and the defendants were only liable as guarantors that the note should be paid by him. The terms of the two instruments show this: One is an absolute promise by the maker of a promissory note, to pay a certain named sum of money at a specified time, while the other is but a collateral promise that the maker shall do as he had promised. The defendant's promise was a "special promise to answer for the debt, default, or miscarriage" of Ephraim Durham; and as the written promise or guaranty does not express any consideration for the promise, the statute (2 R.S. 135, § 2) makes it void. Our former statute on this subject was taken from the 29 Car. 2, ch. 3, and only required that the agreement
should be in writing; nothing, in terms, was said about theconsideration. Yet upon the construction of that statute, it was held both in England and here, that the consideration as well as the promise must be in writing, and that the defect could not be supplied by parol proof that there was in fact a good consideration. (Wain v. Warlters, 5 East, 10; Saunders v.Wakefield, 4 Barn. Ald. 595; Jenkins v. Reynolds, 3Brod. Bing. 14; Morley v. Bothby, 3 Bing. *Page 550 
107; Newbury v. Armstrong, 6 id. 201; Allnutt v.Ashenden, 5 Mann. Grang. 392; Sears v. Brink, 3Johns. 210; Rogers v. Kneeland, 10 Wend. 218, and thecases there cited; Bennett v. Pratt, 4 Denio, 275.) Although under that statute it was held not to be necessary to the validity of the promise, that the consideration should be set forth in terms, in the writing; yet it was held that the writing must contain enough so that the consideration could be collected by fair inference from it, and could not be supplied by parol proof. (Newbury v. Armstrong, 4 Car. Payne, 59; S.C. 6Bing. 201.)
Our present statute, as I think, by requiring theconsideration as well as the promise to be expressed in the writing, was pointed against the doctrine which had in some degree obtained under the former statute, of making out a consideration by argument or conjecture, and in that light it was considered in Smith v. Ives, (15 Wend. 182,) and inParker v. Willson, (15 id. 343.) But without claiming any thing from the change in the language of the statute, the promise under consideration is void, as the writing neither expresses any consideration nor can any be collected by inference from its terms.
There are many cases to show that a guaranty made at the same time with the principal contract, and constituting an essentialground of the credit given to the principal debtor, requires no other consideration than that which upholds the principal contract. It has also been held, that in such cases the consideration need not be expressed in the written guaranty, but may be shown by parol evidence. (Story on Prom. Notes; § 457,citing Leonard v. Vredenburgh, 8 John. 29, and othercases.) This principle need not be denied, for the facts do not admit of its application to the case under consideration. The note and guaranty were not made at the same time. If therefore parol evidence might under any circumstances be received to show a consideration for the guaranty where it formed an essentialground of the credit given to the principal debtor, it would not aid the plaintiff in this case, for no such credit is pretended to have been given.
But if the facts admitted of the application of such a principle, I am free to say that I fully concur in the opinion expressed *Page 551 
by Beardsley, Ch. J. in the late case of Hall v. Farmer,¹ which is now before this court for review, that whatever may have been the true rule under the former statutes of this state, which was in force when Leonard v. Vredenburgh and the other cases, referred to in Story on Promissory Notes, were decided, I am wholly unable to see how any collateral undertaking for the debt, default or miscarriage of another, no matter when made, can be held valid under the present statute. Its language is explicit: "Every special promise to answer for the debt, default or miscarriage of another person" — "shall be void, unless such agreement, or some note or memorandum thereof, expressing the consideration, be in writing, and subscribed by the party to be charged therewith." (2 R.S. 135, § 2.) Here is no exception in terms, nor do I find any in the spirit of the enactment. It extends to every collateral undertaking for another person, whether made at the time when the debt of the principal was created or at any after period.
The case of Brown v. Curtis, decided by this court at the last May term, (ante, p. 225,) was referred to on the argument; and it was insisted that it held that this contract of guaranty is not within the statute of frauds, not upon the ground that it amounts to a promissory note or general endorsement, but upon the ground that there was a new and distinct consideration independent of the debt of the maker of the note, to sustain it, and one moving between the parties to the guaranty, to wit, the money agreed to be paid for the property purchased by Durham, one of the defendants, of Manrow. It is very clear that the decision referred to, if understood as the counsel who cited it understood it, could not sustain his point; for in that case Brown owed Curtis for borrowed money, for which Curtis held his promissory note, and which Brown desired to take up by giving him a negotiable promissory note which he held as payee against G.F. Brown, the maker, in the room of it, to which Curtis replied, "I know nothing of your brother's circumstances, but if you will guarantee the note I will take it," upon which Brown made and signed upon the back of his brother's note the following: "I guarantee the payment of the within," and delivered it to Curtis, who then gave up to Brown the note which he held against him. Now conceding *Page 552 
that as to Durham there was a new and distinct consideration, independent of the debt of the maker, Ephraim Durham, moving between him and Manrow, Moulthrop was a mere surety even in that view of the case, and a joint action could not be sustained against him and Durham; for as to Moulthrop his contract was clearly within the statute. The decision in Brown v. Curtis,
in my opinion, is well sustained; not however upon the ground that Brown was liable upon his written promise to guarantee the note as an independent contract; for that, as it did not express the consideration upon which it was made, and as that could not be supplied by parol evidence, and as it was not a promissory note or general endorsement, was, as I think, plainly within the statute of frauds, and no action could be sustained upon it. But the evidence was sufficient to authorize a recovery on the money counts. It showed that Brown was indebted to Curtis to the amount of the note for money lent, and that he did not take or agree to take the note against G.F. Brown in payment or satisfaction of that debt, but that he expressly refused to do so. Brown's indebtedness for the money lent was not extinguished; it still continued, although the written evidence of it had been given up to him under the circumstances disclosed. (Arnold v. Crane, 8John. 79; Hughes v. Wheeler, 8 Cowen, 77; Pierce v.Drake, 15 John. 475; Tobey v. Barber, 5 id. 67.) Judge Strong in his opinion in that case, showed that under the circumstances Curtis was not precluded from recovering under the money counts in that declaration for the debt Brown owed him, although the guaranty was invalid as a contract; and upon that ground I then thought and am still of opinion that the judgment of the supreme court ought to have been affirmed.
I think the judgment of the supreme court in this case should be reversed, and that of the common pleas affirmed with costs.
GARDINER, J. concurred in the opinion of JEWETT. C.J
HOYT, J. also concurred in opinion that the guaranty was void by the statute of frauds. He distinguished the case from *Page 553 Brown v. Curtiss, (ante, p. 225,) by the circumstance that here another party not connected with the consideration signed the guaranty as surety for his co-guarantor, Durham. That, he thought, brought the undertaking within the statute.(a)
BRONSON, J. not having heard the argument, took no part in the decision.
Judgment affirmed.
(a) In Brown v. Curtiss all the judges except JEWETT and GARDINER were of opinion that the guaranty was not within the statute of frauds, and put their decision upon that ground. The declaration in that case contained the common counts, and Strong J. in giving his opinion made some remarks to the effect that the judgment of the supreme court might be sustained upon those counts, although the guaranty should be held void. As the judgment of this court, however, was placed upon the validity of the guaranty, it was not thought worth while to obscure the decision by noticing in the report any other ground.